IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOLENE S. HANSEN,<br><br>         Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>         Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br><br>Case No. 2:14-CV-00133-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Jolene S. Hansen filed this action asking this Court[1] to reverse and remand the final agency decision denying her Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), *see* 42 U.S.C. §§ 401–434.  The Administrative Law Judge ("ALJ") determined that Ms. Hansen did not qualify as disabled within the meaning of the Act.  (Admin. R. Doc. 19, certified copy tr. of R. of admin. proceedings:  Jolene S. Hansen (hereafter "Tr. __").)  Having carefully considered the parties' memoranda and the complete record in this matter, the Court AFFIRMS the Commissioner's decision.[2]

### I.     FACTUAL AND PROCEDURAL HISTORY

Ms. Hansen filed an application for DIB on August 24, 2010, alleging disability beginning August 19, 2010.  (Tr. 137–38.)  The Regional Commissioner denied Ms. Hansen's claim on December 29, 2010, (tr. 80, 84–87), and again upon reconsideration on March 3, 2011,

---

[1] On May 5, 2014, the parties consented to the undersigned Magistrate Judge conducting the proceeding in this matter under 28 U.S.C. § 636(c).  (ECF No. 11.)

[2] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the Court concludes it does not need oral argument and will determine the appeal on the basis of the written memoranda.

1

(tr. 81, 89–91).  Thereafter, Ms. Hansen requested a hearing before an ALJ.  (Tr. 92–93.)  The ALJ held a hearing on July 18, 2012 (the "Hearing").  (Tr. 32–79.)  On October 12, 2012, the ALJ issued a decision (the "Decision") finding Ms. Hansen not disabled because Ms. Hansen could perform her past relevant work as an office manager.  (Tr. 19–27.)  On December 9, 2012, Ms. Hansen requested the Appeals Council review the ALJ's Decision.  (Tr. 10.)  The Appeals Council denied Ms. Hansen's request on January 24, 2014, (tr. 1–4), making the ALJ's Decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g).  *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court . . . .").

Ms. Hansen claimed multiple sclerosis ("MS"), depression, and anxiety disabled her.  (Tr. 167.)  Ms. Hansen's past relevant work includes an office manager, property manager, retail sales person, ophthalmological technician, and optometric technician.  (Tr. 71–73, 168, 184.)

On June 24, 2008, Ms. Hansen saw neurologist Luciana De Saibro, M.D., after reporting problems with her vision.  (Tr. 234.)  Dr. De Saibro found Ms. Hansen had neuritis of the right eye and possible MS after an MRI of Ms. Hansen's brain showed abnormal white matter lesions.  (Tr. 235–36.)  In August 2009, Ms. Hansen had another brain MRI and cerebral spinal fluid testing.  (Tr. 272–73.)  The results suggested Ms. Hansen had relapsing remitting multiple sclerosis, but Ms. Hansen had no current MS symptoms and only had the "one clinical attack."  (Tr. 268–73.)

Ms. Hansen gave birth to her second child in April 2010.  (Tr. 293.)  During a consultation with Dr. De Saibro on May 11, 2010, Ms. Hansen "complain[ed] of sleep deprivation and fatigue but denie[d] true clinical relapses."  (Tr. 323.)  Dr. De Saibro noted Ms.

Hansen presented as "asymptomatic from a neurological standpoint." (Tr. 324.) During another visit with Dr. De Saibro on August 12, 2010, Ms. Hansen reported feeling depressed and tired because "her baby still [did] not sleep during the night and she [was] sleep deprived." (Tr. 327.) Ms. Hansen continued working four hours a day managing apartments and taking care of her very young children while her husband worked in another town several days a week. (*Id.*) Ms. Hansen denied any tingling or other neurological complaints. (Tr. 328–29.) Ms. Hansen filed for DIB following this visit, alleging an August 19, 2010 disability onset date. (Tr. 137–38.)

On October 22, 2010, Dr. De Saibro again noted that Ms. Hansen's MS presented as "asymptomatic from the neurological standpoint," but Ms. Hansen continued to complain about fatigue and emotional instability relating to the postpartum period, financial difficulties, her husband's work demands, and her young children. (Tr. 336-37.) Ms. Hansen again denied tingling or other neurological complaints. (*Id*.) Dr. De Saibro observed Ms. Hansen had full (5/5) strength, normal coordination, normal sensation, and a normal gait. (Tr. 336*.*) Ms. Hansen continued to work managing apartments part-time through this date. (Tr. 335.)

On December 21, 2010, Joan Zone, Ph.D., reviewed Ms. Hansen's records to assess Ms. Hansen's alleged depression and anxiety at the request of the state agency. (Tr. 299–313.) Dr. Zone found Ms. Hansen's impairments not severe and that Ms. Hansen experienced no limitations due to mental impairments. (*Id.*) The state agency offered Ms. Hansen a consultative psychological examination, but Ms. Hansen declined, reporting that her medications "work[ed] well to control her [mental health] symptoms." (Tr. 313.) On December 29, 2010, state agency consultant Lewis Barton, M.D., after reviewing the record, opined that Ms. Hansen did not have a severe physical impairment within the meaning of the state agency's regulations. (Tr. 314.)

3

On April 17, 2012, Dr. De Saibro noted that Ms. Hansen continued to do well and experienced no clinical relapses; although Ms. Hansen complained of fatigue and reported that "at times she [was] overwhelmed and tearful." (Tr. 374.) Dr. De Saibro observed that Ms. Hansen appeared oriented with an appropriate mood and affect and demonstrated full (5/5) strength throughout, intact coordination, normal sensory responses, and normal gait. (Tr. 375.) While Ms. Hansen had ceased working at the apartment complex by this time, she continued to "go[] to the gym a few times a week." (Tr. 374.) Ms. Hansen also mentioned periodic numbness and tingling in her toes and fingers, but she did not want any medication for neuropathic pain. (*Id.*) Dr. De Saibro opined that Ms. Hansen's MS was "currently stable" and that Ms. Hansen had "no significant accumulated disability at [that] time." (Tr. 376.)

During the Hearing on July 18, 2012, Ms. Hansen testified she lives with her husband and two children, ages two and four. (Tr. 37.) Ms. Hansen reported quitting her last job in September 2010 when fatigue began interfering with her job by making her forgetful. (Tr. 39.) Ms. Hansen testified she has daily fatigue, which causes her to take two, two-and-a-half hour naps every day. (Tr. 55.) Ms. Hansen also experiences numbness and tingling in her limbs, depression, memory loss, and heat sensitivity, which she attributes to MS. (Tr. 49–50, 63.) When she becomes too fatigued, her sister and mother help babysit her children. (Tr. 54.) Ms. Hansen reported she could lift and carry ten pounds on a regular basis, sit for twenty to thirty minutes at a time, and stand for twenty to thirty minutes at a time. (Tr. 56–57.) Ms. Hansen also drives three to five times per week, shops for her family, and does light housework. (Tr. 60–61.)

The ALJ posed a hypothetical to the vocational expert ("VE") involving "a range of sedentary work, lifting 10 pounds occasionally and less than 10 pounds frequently, standing or walking for two hours out of an eight hour day, and sitting for six hours out of an eight hour day"

while alternating sitting and standing every thirty minutes.  (Tr. 74–75.)  The VE testified Ms. Hansen could still perform her past relevant work as an office manager although her sitting and standing limitations would erode the market, leaving approximately 180,000 jobs nationally.  (Tr. 75–76.)

After considering testimony of the VE, the ALJ found Ms. Hansen had sufficient residual functional capacity ("RFC") to perform past relevant work as an office manager.  (Tr. 26.)  In the Decision on October 12, 2012, the ALJ found Ms. Hansen not disabled as defined in the Act from August 19, 2010 to the date of the Decision.  (Tr. 27.)

In November 2012, in response to the ALJ's expressed interest in a reproducible fatigue test at the Hearing, (tr. 66–67), Dell Felix, a physical therapist, performed a RFC Evaluation on Ms. Hansen.  (Tr. 11-14.)  Mr. Felix concluded Ms. Hansen could tolerate occasional light physical demand but opined that she could not "maintain [this level of work] on a regular or productive basis."  (Tr. 14.)  The Appeals Council found the testing done by Mr. Felix reflected "a later time" and therefore did not affect the decision about Ms. Hansen's disability on or before October 12, 2012.  (Tr. 2.)

## II.     STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA").  This Court reviews the Commissioner's decision to determine whether substantial evidence in the record supports the Commissioner's factual findings and whether the Commissioner applied the correct legal standards.  *Lax v. Astrue*, 489

F.3d 1080, 1084 (10th Cir. 2007).[3] The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. § 405(g).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted). "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotations marks and citations omitted). Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will "review only the *sufficiency* of the evidence." *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007) (citation omitted). The court does not have to accept the Commissioner's findings mechanically, but "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted). "'The possibility of drawing two inconsistent conclusions

---

[3] Courts apply the same analysis in determining disability under Title II and Title XVI. *House v. Astrue*, 500 F.3d 741, 742 n.2 (8th Cir. 2007).

from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the court may not "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'"  *Lax*, 489 F.3d at 1084 (alteration in original) (quoting *Zoltanksi v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the reviewing court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards.  *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

### III.   FIVE-STEP DISABILITY DETERMINATION

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation.  *See* 20 C.F.R. § 404.1520(a)(1); *Williams v. Bowen*, 844 F.2d 748, 750–53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987).  The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;

(2) The claimant has a medically severe physical or mental impairment or combination of impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a)(4) (outlining the five-step sequential evaluation); *Yuckert*, 482 U.S. at 140–42 (citations omitted) (same). The claimant has the initial burden of establishing his disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

## IV. ANALYSIS

In this case, the ALJ evaluated Ms. Hansen's claim through step four, making the following findings of fact and conclusions of law:

1) Ms. Hansen "meets the insured status requirements of the Social Security Act through December 31, 2015." (Tr. 21.)
2) Ms. Hansen "has not engaged in subsequent gainful activity since August 19, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*)." *Id.*
3) Ms. Hansen "has the following severe impairments: multiple sclerosis; obesity (20 CFR 404.1520(c))." *Id.*
4) Ms. Hansen "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (Tr. 22.)
5) Ms. Hansen "has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a), with the following additional limitations:
    - Can lift 10 pounds frequently and less than 10 pounds occasionally;
    - Can sit for about 6/8 hours and stand/walk for 2/8 hours; and
    - Must have the option to alternate between sitting and standing positions at will, secondary to her ability to sit or stand for only 30 minutes at one time." (*Id.*)
6) Ms. Hansen is "capable of performing past relevant work as an office manager. This work does not require the performance of work-related

      activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)."  (Tr. 26.)

7) Ms. Hansen "has not been under a disability, as defined in the Social Security Act, from August 19, 2010, through the date of this decision (20 CFR 404.1520(f))."  (Tr. 27.)

Ms. Hansen argues the ALJ erred by improperly evaluating her credibility.  (Pl.'s Opening Br. 6, ECF No. 16.)  Ms. Hansen also argues the Appeals Council erred by failing to address Dr. Felix's RFC assessment.[4]  (*Id.* at 5–6.)  The Court finds that though the later submitted evidence had temporal relevance, it would not have changed the ALJ's decision.  The Court also finds the ALJ used the proper legal standards to evaluate Ms. Hansen's credibility and substantial evidence supports his evaluation.

### *A. Evaluation of Mr. Felix's RFC Assessment*

Ms. Hansen argues that the Appeals Council did not appropriately consider Mr. Felix's RFC Assessment (the "Assessment") in determining whether substantial evidence supported the ALJ's decision.  (Pl.'s Opening Br. 9–10, ECF No. 16.)  The Court agrees with Ms. Hansen that the Appeals Council erred in its evaluation that the later evidence "[was] about a later time."  (Tr. 2.)  However, temporal relevance is not the only factor the Court must consider.  The Appeals Council must consider evidence submitted after the ALJ's decision if it is 1) new, 2) material, and 3) related to the period on or before the date of the ALJ's decision.  20 C.F.R. § 404.970(b).  Despite its relevance, the Assessment does not qualify as material because it would not have changed the ALJ's decision.  Therefore, the Court finds that the Appeals Council appropriately disregarded the new evidence.

---

[4] By making only these arguments in her opening brief, Ms. Hansen waives any additional challenges to the ALJ's decision.  *See Anderson v. Dep't of Labor*, 422 F.3d 1155, 1182 n.51 (10th Cir. 2005) (waiving argument claimant did not first raise in her opening brief).

Evidence qualifies as new "if it is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). At the time of the Hearing, the ALJ did not have access to the Assessment because it did not exist, thus, it qualifies as new.

New evidence has chronological relevance if it relates to the period on or before the date of the ALJ's opinion. *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013). The Appeals Council has no duty to consider new evidence based on anything other than the symptoms the ALJ considered. *See Villalobos v. Colvin*, 544 F. App'x 793, 796 (10th Cir. 2013) (finding doctor's letter submitted after the hearing did not trigger a duty to solicit further evidence because he diagnosed the patient "now" with depression more than one month after the hearing, and no prior evidence of depression existed). However, new evidence likely has temporally relevance when it corroborates the claimant's allegations before or at the time of the ALJ's decision. *Padilla*, 525 F. App'x at 713 (holding psychological report had temporal relevance when it corroborated medical evidence and statements of an anxiety diagnosis before and at the hearing).

Ms. Hansen alleged fatigue as her primary limiting symptom at the Hearing. (Tr. 53–55.) Her medical record tends to show the fatigue stemmed from her depression and/or caring for two young children. (Tr. 341, 374.) The Assessment directly tested the severity of Ms. Hansen's fatigue.

Furthermore, new evidence likely has temporal relevance when, at the time of the decision, the ALJ explicitly noted the absence of evidence in support of an allegation, and the new evidence addresses the ALJ's inquiry. *See Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006) (noting temporal relevance of diagnostic MRI reports and physical examination where ALJ had noted the lack of evaluations). During the Hearing in Ms. Hansen's case, the

ALJ noted the absence of evidence of the severity of fatigue, (tr. 67), and the Assessment addressed the severity of Ms. Hansen's fatigue.

The new evidence had temporal relevance because Ms. Hansen likely did not develop additional sources of fatigue in the one month between the Decision and the doctor's visit. The Commissioner argues that because Mr. Felix relied on "current" levels of health and fatigue at the time of their visit, the Assessment did not indicate the severity of Ms. Hansen's fatigue one month earlier at the time of the ALJ's decision. (Def.'s Answer Br. 12, ECF No. 17.) First, the fact that the exam occurred more than one month after the date of the opinion is not dispositive. *See Tingley v. Colvin*, No. 1:12–cv–104 BCW, 2013 WL 3088827, at *1–2 (D. Utah June 18, 2013) (holding an assessment temporally relevant even though it occurred three months after the ALJ's decision). Second, while the Commissioner's argument would have more relevance had Mr. Felix proposed a new diagnosis or indicated significantly more serious fatigue, it lacks persuasive force because the Assessment acted only as a measure of Ms. Hansen's fatigue and agreed with the evidence before the ALJ. New evidence qualifies as temporally relevant when it is highly unlikely that deterioration noted in subsequent evidence developed entirely in the time between the ALJ's decision and the new record. *Burkett v. Callahan*, 978 F. Supp. 1428, 1431 (D. Kan. 1997); *see also Taufer v. Colvin*, No. 2:13CV0077 DS, 2014 WL 119464, at *1 (D. Utah Jan. 13, 2014) (finding new IQ evidence temporally relevant because IQ is relatively stable and unlikely to change in a short period of time). As Ms. Hansen argues, the limitations the Assessment noted did not likely develop between the time of the Decision and the time of the Assessment. (Pl.'s Opening Br. 10, ECF No. 16.) The Assessment was temporally relevant because it corroborated Ms. Hansen's complaints of fatigue during the Hearing. (*See* tr. 67.) In fact, instead of indicating an exacerbation of Ms. Hansen's condition, the Assessment agreed

with the evidence before the ALJ. Because the Assessment corroborated Ms. Hansen's allegations before the ALJ and did not report a new diagnosis or condition from the time of the Decision, the Assessment had temporal relevance.

Even though the new evidence was relevant, the Court concurs with the Commissioner that the evaluation would not have changed the ALJ's opinion and is not material. New evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191 (quotation marks and citation omitted). The Court must determine if the new evidence, considered in the context of the record, has a reasonable likelihood of changing the ALJ's decision. If new evidence does not differ in a significant way from the evidence presented before the ALJ and would not have changed the ALJ's decision, then the new evidence is not material. *Taufer*, 2014 WL 119464, at *1–2 (finding the Appeals Council rightfully declined review of new evidence when "the ALJ's findings were supported by substantial evidence as well as the totality of the evidence, with or without the new evidence"). The Assessment was not material because the Assessment would not have changed the ALJ's original decision.

Mr. Felix's examination notes do not differ significantly from the evidence before the ALJ. In many instances, the ALJ's determinations limited Mr. Hansen's RFC more than the Assessment would have. The ALJ noted that Ms. Hansen could "lift[ ] 10 pounds occasionally and less than 10 pounds frequently, standing or walking for two hours out of an eight [h]our day, and sitting for six hours out of an eight hour day," with a sit/stand option. (Tr. 74–75, *see also* tr. 22.) The Assessment reported that Ms. Hansen had "good strength to carry the [thirty-five pound] box and [fifty pounds of] dumbbells occasionally." (Tr. 14.) In his RFC determination, the ALJ approved Ms. Hansen for sedentary work that required alternating standing and sitting

for thirty minutes each. (Tr. 22.) Mr. Felix noted Ms. Hansen could sit for thirty-five minutes and stand for forty. (Tr. 13.) The work for which the ALJ evaluated the claimant was less demanding than the Assessment. Therefore, because the objective evidence in the Assessment did not contradict the ALJ's evaluation, the Assessment would not have changed the outcome. As a result, the Court finds the Appeals Council did not err in failing to consider the Assessment because the Assessment was not material.

Although the new evidence has temporal relevance, the ALJ, given the opportunity to review the Assessment, would not have changed his decision. Therefore, the Court refuses to remand the decision on this point.

### *B. Evaluation of Ms. Hansen's Credibility*

Ms. Hansen next argues the ALJ did not properly evaluate her credibility. (Pl.'s Opening Br. 10, ECF No. 16.) The Court disagrees.

"'Credibility determinations are peculiarly the province of the finder of fact, and [a court] will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)). If objective medical evidence shows a medical impairment that produces pain, the ALJ must consider the claimant's assertions of severe pain and decide the extent to which the ALJ believes the claimant's assertions. *Id.* To do this, the ALJ should consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly

> within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* (citation and internal quotation marks omitted). But this analysis "does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ found Ms. Hansen's "allegations [] somewhat out-of-proportion to the medical findings, and generally not compatible or reasonably consistent with the medical evidence of record and all other evidence – and therefore not fully persuasive." (Tr. 24.) First, the ALJ found that Ms. Hansen's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* However, he also noted that Ms. Hansen's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." *Id.*

The ALJ noted that no medical evidence suggests Ms. Hansen's limitations "would have prevented her from doing sedentary level work." *Id.* Ms. Hansen testified that she "experienced significant fatigue, numbness and tingling in her legs, and difficulty with concentration and memory." *Id.* However, the medical record suggests no impairment so severe as to prevent her from doing sedentary work. Dr. De Saibro, in a number of evaluations spanning from October 2010 to April 2012, noted Ms. Hansen had full (5/5) strength, normal sensory responses, and a normal gait. (Tr. 328 (Aug. 2010), 336 (Oct. 2010), 375 (Apr. 2012).) In an exam in December 2010, Dr. Barton, a state agency physician, assessed that Ms. Hansen did not have a physical impairment that qualified as "severe" within the meaning of the agency's regulations. (Tr. 314.) In April 2012, Dr. De Saibro noted that Ms. Hansen continued to do well, and though she

complained of tingling, Ms. Hansen decided against medication. (Tr. 374.) The medical record reports no exacerbation of her condition; Dr. De Saibro even noted Ms. Hansen's MS appeared "asymptomatic from a neurological standpoint." (Tr. 323, 336.) Furthermore, Ms. Hansen acknowledged her fatigue could result from situational stressors, namely caring for her children, particularly when her husband worked away from home. (Tr. 327.)

Ms. Hansen argues that "three years of fatigue cannot be explained by the birth of a child." (Pl.'s Reply Br. 6, ECF No. 18.) Ms. Hansen herself admitted that not only the birth of her child but also caring for two young children contributed to her fatigue. (Tr. 327, 337.) Even in the same visits where she complained of fatigue, she "denie[d] true clinical relapses." (*See, e.g.,* tr. 323.) Sufficient evidence suggests that Ms. Hansen experienced various stressors (*i.e.,* raising children, finances, her husband being away), (tr. 327, 337), which contributed to her fatigue even when she was not experiencing clinical relapses. (Tr. 323.)

For the reasons set forth above, the Court finds substantial evidence supports the ALJ's evaluation of Ms. Hansen's credibility.

## V. CONCLUSION

Based on the foregoing, the Court finds that substantial evidence supports the Commissioner's decision, and the Commissioner applied the correct legal standards. Thus, the Court AFFIRMS the Commissioner's decision in this case.

DATED this 27th day of March, 2015.

BY THE COURT:

*Evelyn J. Furse*
Evelyn J. Furse
United States Magistrate Judge

15